**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

TANZI F.,[1]

     Plaintiff,

        v.                          CIVIL NO. 3:19cv167 (HEH)

ANDREW M. SAUL,[2]
Commissioner of Social Security,

     Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security benefits under the Social Security Act. Tanzi F. ("Plaintiff"), fifty-one years old at the time his benefits application, has a GED and previously worked as a cleaner/sterilizer, rest area cleaner, truck washer, and statement clerk. (R. at 26, 41, 43, 51.) Plaintiff suffers from diabetes mellitus, peripheral neuropathy, hypertension, and degenerative joint disease in the knees. (R. at 17.) Plaintiff asserts that his impairments—which cause weakness and swelling, as well as constant pain, in his feet, back, and knees—prevent him from working and render him disabled. (R. at 51-52, 1090.)

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this matter.

On November 3, 2015, Plaintiff applied for disability insurance benefits and supplemental security income. (R. at 15, 221-230.) After Plaintiff's application was denied, and after exhausting his administrative remedies, Plaintiff seeks review of the Administrative Law Judge's ("ALJ") decision. This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff argues that the ALJ erred in her finding that Plaintiff is "not disabled." Plaintiff contends that the ALJ (1) failed to explain her statement that Plaintiff "has not had the level of treatment one would expect for a disabled individual"; (2) failed to adequately explain the evaluation of Plaintiff's daily activities; (3) mischaracterized the medical evidence of record; (4) failed to conduct an adequate analysis of Plaintiff's physical functions; and (5) erred by failing to include a limitation in Plaintiff's residual functional capacity related to maintaining concentration, persistence, or pace. (Pl.'s Mot. for Summ. J. and Br. in Supp. 4-5, ECF No. 21 ("Pl.'s Mem.").)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 21) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 22) be DENIED and the final decision of the Commissioner be VACATED and REMANDED.

---

[3]   The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

## I. PROCEDURAL HISTORY

On November 18, 2015, Plaintiff filed for disability insurance benefits and supplemental security income, alleging disability due to diabetic neuropathy, atrial fibrillation, and chondromalacia, with an alleged onset date of September 17, 2015. (R. at 221-30, 276.) The Social Security Administration denied Plaintiff's claims initially on March 18, 2016. (R. at 15.) Plaintiff requested a hearing before an ALJ, and a hearing was held on February 15, 2018. (R. at 15.) On May 23, 2018, the ALJ issued a written decision, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 15-27.) Plaintiff requested review of the ALJ's decision, and on January 14, 2019, the Appeals Counsel issued a decision, finding that Plaintiff was not disabled. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make

3

credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

## III. THE ALJ'S DECISION

On February 15, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 35-74.) On May 23, 2018, the ALJ issued a written decision, finding that Plaintiff did not qualify as disabled. (R. at 15-27.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 15-27.); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines that the claimant can still do his past relevant work, the claimant will be found not disabled. *Id.* If the ALJ determines that the claimant cannot perform his past work, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of September 17, 2015. (R. at 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus, peripheral neuropathy, hypertension, and degenerative joint disease in the knees. (R. at 17.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including the testimony of Plaintiff, the findings of treating and examining health care providers, Plaintiff's medical record, and opinions rendered by state agency consultants. (R. at 20-26.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform sedentary work with the following limitations:

> [The claimant] can lift 10 pounds occasionally and frequently. He can stand and walk for two hours and sit for six hours in an eight-hour workday, but must be able to alternate between sitting and standing in place every half hour. He can occasionally climb ramps and stairs, but can never [climb] ladders, ropes, and scaffolds. He can occasionally balance, stoop, and crouch, but never kneel or crawl. He can frequently grasp, handle, and finger bilaterally. He must use a cane to

ambulate. He must avoid any/all exposure to hazards, temperature extremes (hot and cold), humidity, wetness, and vibration.

(R. at 20.)

At step four, the ALJ considered whether Plaintiff could perform his past relevant work, based on the residual functional capacity determination. (R. at 26.) In the instant case, Plaintiff previously worked as a statement clerk, cleaner/sterilizer, rest area cleaner, and truck washer. (R. at 26.) The ALJ, relying on the testimony of the vocational expert, determined that Plaintiff is able to perform his past relevant work as a statement clerk as it is generally performed. (R. at 26.) Because the ALJ determined, at step four, that Plaintiff could perform his past relevant work as a statement clerk, the ALJ concluded that Plaintiff was not disabled. (R. at 26-27.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing[4] that the ALJ (1) failed to explain her statement that Plaintiff "has not had the level of treatment one would expect for a disabled individual"; (2) failed to adequately explain the evaluation of Plaintiff's daily activities; (3) mischaracterized the medical evidence of record; (4) failed to conduct an adequate analysis of Plaintiff's physical functions; and (5) erred by failing to include a limitation in Plaintiff's residual functional capacity related to maintaining concentration, persistence, or pace. (Pl.'s Mem. at 3-5.) Because the ALJ failed to explain how Plaintiff's activities of daily life represent an ability to perform sustained work activity, and because the

---

[4] Defendant argues that Plaintiff's arguments are poorly developed, "span only a few pages and shift from topic to topic with few citations to law or the record." (Def.'s Mot. Summ. J. & Br. in Supp. Thereof 13, ECF No. 22 ("Def.'s Mem.").) Plaintiff's arguments, according to Defendant, should therefore be waived. (Def.'s Mem. at 13.) The Court does not agree that waiver should apply here because the Court was able to discern Plaintiff's cited errors and meaningfully review the ALJ's decision. However, the Court observes that Plaintiff's arguments could have—and should have—been more fully developed, and notes that the absence of a fulsome and organized argument hindered the Court's review of this case.

ALJ's failure to conduct an adequate analysis of Plaintiff's physical functions and explain the resulting limitations frustrates meaningful review, remand is necessary.

### A. The ALJ's Statement that Plaintiff Has Not Had the Level of Treatment One Would Expect for a Disabled Individual is Adequately Explained.

Plaintiff first challenges the ALJ's statement that Plaintiff was not receiving "the level of treatment one would expect for a disabled individual." (Pl.'s Mem. at 4; *see* R. at 25.) According to Plaintiff, the ALJ did not sufficiently explain "what this statement means." (Pl.'s Mem. at 4.) Defendant responds that Plaintiff only views the ALJ's statement "in isolation, rather than in the context of the entire decision." (Def.'s Mem. at 14.) Defendant argues that, given the ALJ's discussion regarding Plaintiff's responsiveness to conservative treatment and "improvements in pain with treatment," the "ALJ's meaning was clear" in the context of her decision. (Def.'s Mem. at 14.)

Here, the ALJ made the challenged statement in formulating Plaintiff's residual functional capacity. (R. at 20-26.) In conducting a residual functional capacity analysis, an ALJ must provide a "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). Such narrative discussion helps this Court conduct a meaningful review of the basis for the ALJ's ruling. *Id*. The ALJ must therefore discuss "which evidence the ALJ found credible and why" and conduct "a specific application of the pertinent legal requirements to the record evidence." *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). In other words, a sufficient residual functional capacity analysis must include: "(1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019).

In determining the degree of limitation alleged by Plaintiff in the residual functional capacity analysis, the ALJ considered Plaintiff's subjective complaints of pain in conjunction with his medications and other treatment, as well as treating notes in Plaintiff's medical record. (R. at 20-25.) The ALJ ultimately determined that the "medical evidence of record reveals responsiveness to conservative treatment and medications, with improvement." (R. at 25.) The ALJ found that, "[a]fter careful consideration of the evidence," Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms. (R. at 25.) In assessing Plaintiff's credibility, the ALJ determined that "he does have significant musculoskeletal, hypertensive, diabetic, and neuropathic issues with residual pain. However, the degree of limitation alleged is not supported in the record. The claimant has not had the level of treatment one would expect for a disabled individual." (R. at 25.)

Having reviewed the ALJ's opinion, the Court concludes that the ALJ's statement, read in context, is sufficiently clear and understandable. *See Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (unpublished per curiam opinion) (analyzing sufficiency of ALJ explanation by examining the ALJ's decision "as a whole"). As described above, the challenged conduct was made in a summarizing paragraph. Immediately following, the ALJ explained that "the medical evidence of record reveals responsiveness to conservative treatment." (R. at 25.) In this context, the challenged statement is referencing the ALJ's conclusion that the treatment received by Plaintiff was conservative and effective. The Court therefore has no trouble discerning the ALJ's statement and finds no error occurred.[5]

---

[5]     Plaintiff also argues that there is no evidence in the record that supports the ALJ's statement. Having concluded that the challenged statement references the ALJ's finding that Plaintiff received conservative treatment, and because the Plaintiff also challenges the sufficiency of that conclusion in a separate argument, the issue will be addressed below.

**B. The ALJ Failed to Explain How Plaintiff's Activities of Daily Life Represent an Ability to Perform Sustained Work Activity.**

Plaintiff also challenges the ALJ's consideration of Plaintiff's activities of daily life, arguing that the ALJ misconstrued the record and failed to explain how Plaintiff's activities of daily life correspond to a retained ability to perform sustained work activity over an eight-hour workday, five days per week. (Pl.'s Mem. at 5.) Defendant responds that the ALJ properly considered Plaintiff's activities as part of her overall evaluation of the record, including review of Plaintiff's testimony and discussion of Plaintiff's treating source opinion of record. (Def.'s Mem. at 17.)

Here, the ALJ determined that, despite the medical evidence showing Plaintiff's physical limitations in his ability to perform work-related activities, Plaintiff remains able to perform work at a sedentary level of exertion. (R. at 26.) In making this determination, the ALJ relied on the record medical evidence, the degree of medical treatment Plaintiff required, Plaintiff's medical history, as well as Plaintiff's description of his activities and lifestyle. (R. at 20-26.) In reviewing Plaintiff's daily living activities, the ALJ determined that "the daily activities that the claimant does perform are inconsistent with his complaints of prolonged and consistent disabling functional limitations. In fact, the record and objective medical evidence reflects that claimant's limitations mildly restrict his daily activities." (R. at 25.) To support this assertion, the ALJ cited to certain medical records listing Plaintiff's ability to ambulate independently and Plaintiff's statement from 2015 that he walked for exercise. (R. at 25, 383, 942, 1022.) The ALJ also cited to Plaintiff's testimony regarding his activities and posited that Plaintiff's activities are "inconsistent with disability." (R. at 26.) The daily activities cited by the ALJ included Plaintiff's ability to shower and dress himself, cook and prepare simple meals, use utensils, wash dishes, sweep, vacuum, clean the bathroom, wash clothes, drive, go to doctors' appointments, and have visits with his adult

children. (R. at 26.)

In determining whether a claimant is disabled, an ALJ will consider a claimant's daily activities, specifically when determining whether the claimant's described symptoms are consistent with other evidence in the record or objective medical evidence. *See* §§ 404.1529(a), 416.929(a). However, in considering a claimant's daily activities, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). "A claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with [his] ability to carry out daily activities." *Arakas*, 983 F.3d at 101. The "critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as [he] would be by an employer." *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

The Fourth Circuit has considered this issue on multiple occasions. For example, in *Woods* and *Arakas*—both of which were recently decided—the Fourth Circuit reversed and remanded, concluding that the ALJ erred in considering plaintiffs' daily activities. *See Arakas*, 983 F.3d at 100-01; *Woods*, 888 F.3d at 694-95. In *Woods*, although the ALJ noted the plaintiff's ability to maintain personal hygiene, cook, perform household chores, and socialize, the ALJ failed to consider other evidence—namely, the plaintiff's statements regarding her inability to button her clothes or hold a hairdryer, her troubles cutting and chopping while cooking, and the difficulties plaintiff experienced in finishing her laundry. 888 F.3d at 694-95. Similarly, in *Arakas*, the Fourth Circuit cited the ALJ's failure to mention the plaintiff's testimony regarding the extent to which she was limited in her daily activities. 983 F.3d at 100.

In this case, the ALJ did not fully acknowledge the extent to which Plaintiff is able to perform tasks of daily living. For example, the ALJ cited to Plaintiff's ability to shower, despite Plaintiff's testimony that, while he is able to stand in the shower, "[m]ost of the time [he] sit[s] on the side." (R. at 26, 56.) The ALJ suggested that Plaintiff is able to dress himself, though Plaintiff testified that he cannot button buttons or tie shoelaces, that "most of the time [he] just use[s] this strap when [he] . . . put[s his] shoes on," and that his wife buttons his buttons for him. (R. at 26, 60.) While the ALJ cited to Plaintiff's ability to do housework "at times," she failed to address the frequency of such tasks with any specificity. (R. at 26.) Plaintiff testified, for example, that he sweeps his house once or twice a week, never mops, vacuums "[m]aybe once a month," never makes his bed, and does the laundry once a month. (R. at 57-58.) While the ALJ pointed to Plaintiff's ability to drive and to host visits with his adult children to support her position that Plaintiff's activities are inconsistent with disability, Plaintiff's testimony reveals he drives "[m]aybe twice" a week and sees his children "[m]aybe once every two weeks, twice every two weeks, once or twice." (R. at 26, 58, 61.) Although the ALJ did acknowledge that Plaintiff is "limited to a degree in his daily living activities as a result of his impairments" (R. at 25), the Court finds that the ALJ's consideration of the Plaintiff's activities of daily living was insufficient given the ALJ's selective discussion of Plaintiff's testimony and disregard for Plaintiff's qualifying statements.

Nevertheless, even if the ALJ had properly considered Plaintiff's daily activities, the ALJ must also explain how these limited daily activities support the conclusion that the Plaintiff could sustain full-time employment. *See Arakas*, 983 F.3d at 101. As the Fourth Circuit has explained, "[a] claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with [his] ability to carry out daily activities." *Arakas*, 983 F.3d at 101. "[T]he critical

differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as [he] would be by an employer." *Id.* (quoting *Bjornson*, 671 F.3d at 647); *see also Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269-70 (4th Cir. 2017) (citing the ALJ's failure to acknowledge the limited extent of the plaintiff's activities or how those activities showed the plaintiff could sustain a full-time job).

Here, the ALJ concluded that "the daily activities that the claimant does perform are inconsistent with . . . consistent disabling functional limitations." (R. at 25.) The ALJ did not, however, further explain how these limited daily activities support the conclusion that the Plaintiff could sustain full-time employment. *See Arakas*, 983 F.3d at 101. Although the ALJ includes certain exertional limitations in Plaintiff's residual functional capacity and briefly cites the exertional suggestions of state agency consultants, the ALJ does not explain how Plaintiff's daily activities show that he could persist through an eight-hour workday. The ALJ therefore failed to "build an accurate and logical bridge" from the evidence to her conclusion. *See Monroe*, 826 F.3d at 189. Substantial evidence, therefore, does not support the ALJ's conclusion.

**C. The ALJ Did Not Mischaracterize the Medical Evidence of Record.**

Plaintiff next argues that the ALJ mischaracterized the medical evidence of record relating to Plaintiff's treatment and ability to move without an assistive device. (Pl.'s Mem. at 4.) First, Plaintiff contends that the ALJ incorrectly stated that Plaintiff's pain was treated conservatively and showed improvement with medications. (Pl.'s Mem. at 4.) Defendant responds that substantial evidence, including multiple medical record references to improvements in Plaintiff's pain with prescribed medication, supports the ALJ's finding that conservative treatment helped Plaintiff. (Def.'s Mem. at 15.) Second, Plaintiff argues that the ALJ mischaracterized the medical evidence

in stating that Plaintiff has "the ability to stand, walk, and move about satisfactorily without the use of a handheld assistive device." (Pl.'s Mem. at 4 (citing R. at 25).) Defendant responds that the ALJ specifically pointed to multiple record references to Plaintiff ambulating independently, and that, "even if the ALJ was incorrect in reciting medical evidence regarding Plaintiff's ability to walk without a cane," any error was harmless, since the ALJ included a cane in Plaintiff's residual functional capacity. (Def.'s Mem. at 15.) The Court addresses each argument in turn.

### 1. The ALJ Did Not Mischaracterize Plaintiff's Conservative Treatment.

Plaintiff first challenges the ALJ's conclusions that the "medical evidence of record reveals responsiveness to conservative treatment and medications, with improvement." (Pl.'s Mem. at 4.) The ALJ cited to Plaintiff's medical records to support her position that Plaintiff received conservative treatment in the form of medication, cortisone shots, massages, and topical creams, and such conservative treatment improved Plaintiff's pain. (R. at 21-24, 53, 1090, 1202, 1234, 1380, 1394.) Plaintiff's medical records show treatment through medication management, such as Lidocaine foot cream and prescription pain relievers, as well as cortisone injections and massages, to treat Plaintiff's back, knee, and foot pain. (R. at 22-24, 53, 1057, 1090, 1169, 1178, 1189, 1202.) Medical records reveal that lidocaine cream provided by Plaintiff's treating physician, Dr. Robert Sealand, "help[ed] some," and through treatment with a pain management physician, Plaintiff's "foot pain is much improved." (R. at 1202, 1380.) Additional medical records note that pain medication treatment made Plaintiff feel better and while "understanding that his pain will never be resolved," Plaintiff stated that "with his current regimen[,] he feels he can function." (R. at 1234, 1394.)

While Plaintiff complained of severe, chronic pain, the medical records also show that medication mitigated Plaintiff's pain. (R. at 1012 ("Patient reports he usually takes . . . oxycodone

. . . and it controls the pain."), 1057 ("He has . . . chronic pain from diabetic neuropathy . . . [but] [c]urrently fairly well controlled on percocet."), 1090 ("Mitigating factors include pain medication and massage."), 1169 ("Pt is currently on Topamax, which he notes has been helping 'somewhat.'"), 1178 ("He notes the Topamax has stopped the radiation of the pain to the calves."), 1202 (noting foot pain "is much improved"), 1380 ("Pt given help lidocaine %5 gel/cream which help some.").) Plaintiff's medical record notations, therefore, underscore that Plaintiff did receive conservative treatment via medication, which appeared to help relieve Plaintiff's pain.

For these reasons, the evidence discussed above supports the ALJ's conclusion that Plaintiff's outpatient medication treatment was conservative.

### 2. The ALJ Did Not Mischaracterize the Evidence Regarding Plaintiff's Ability to Ambulate.

Plaintiff next challenges the ALJ's statement that Plaintiff has "the ability to stand, walk, and move about satisfactorily without the use of a handheld assistive device," and contends that the ALJ mischaracterized the medical evidence regarding Plaintiff's ability to ambulate. (R. at 25; Pl.'s Mem. at 4.) Despite the ALJ's challenged statement that the Plaintiff has the ability to move without the use of an assistive device, the ALJ ultimately concluded in Plaintiff's residual functional capacity that Plaintiff "must use a cane to ambulate." (R. at 20.) The ALJ, however, failed to explain the decision to include a cane or reconcile this decision with other contradictory findings in the opinion.

In her decision, the ALJ noted that Plaintiff suffered from neuropathy, or numbness or weakness, in the feet and lower extremities and that physical examinations similarly revealed lower extremity weakness, decreased sensation, absent reflexes and reduced range of motion. (R. at 20-22.) Plaintiff testified to the use of a cane and wheelchair, which the ALJ noted in her decision. (R. at 21 (citing R. at 52).) The ALJ described the medical evidence of record, some of

14

which reported use of a cane and wheelchair. (R. at 20-21, 23-24). The ALJ also considered the opinion of treating physician Dr. Robert Sealand, who provided that Plaintiff's "neuropathy is debilitating and limits his ability to walk, or stand for even short periods of time." (R. at 24, 1413.) The ALJ quoted Dr. Sealand's opinion and stated, "I accord great weight to this opinion as consistent with the medical evidence of record as a whole." (R. at 24.) Similarly, the ALJ accorded only partial weight to opinion evidence by state agency consultants who opined that Plaintiff could "stand and walk for four hours total and sit for about six hours total." (R. at 24.) Relating to her conclusion regarding the state agency consultant opinions, the ALJ stated that the "evidence in this case depicts even greater limitations due to the claimant's musculoskeletal, hypertensive, diabetic, and neuropathic issues." (R. at 24.)

Despite these findings, elsewhere in her decision, the ALJ appears to reject Plaintiff's use of a cane. (R. at 21, 24-25, 383, 942, 1022.) The ALJ cites medical records reporting Plaintiff's ability to ambulate independently or without complaint (R. at 21, 24-25, 942, 1022), as well as other records citing Plaintiff's reported walking for exercise. (R. at 23, 25, 383). In rejecting Plaintiff's subjective complaints of pain during the residual functional capacity assessment, the ALJ stated that "the medical evidence of record reveals . . . the ability to stand, walk, and move about satisfactorily without the use of handheld assistive device." (R. at 25.) The ALJ ultimately concluded in Plaintiff's residual functional capacity that Plaintiff "must use a cane to ambulate," but the ALJ did not explain the decision to include a cane or reconcile this decision with other contradictory findings in the opinion. (R. at 20.)

The ALJ's statement that Plaintiff has "the ability to stand, walk, and move about satisfactorily without the use of a handheld assistive device" does find some support in the record, like medical records noting Plaintiff's reports of walking for exercise (R. at 23, 25, 383), as well

15

as medical records noting Plaintiff's ability to ambulate independently or without complaint (R. at 21, 24-25, 942, 1022). While the ALJ did not necessarily "mischaracterize" the evidence, as Plaintiff avers, the ALJ failed to adequately reconcile the contradictions and explain her ultimate conclusions, which frustrates meaningful review. *See Woods*, 888 F. 3d at 694 (explaining that an ALJ "must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") Plaintiff's next argument—that the ALJ failed to adequately identify and explain Plaintiff's functional limitations—best addresses the ALJ's failure to explain her conclusions. (*See* Pl.'s Mem. at 5.)

**D.   The ALJ's Failure to Conduct an Adequate Analysis of Plaintiff's Physical Functions and Explain the Resulting Limitations Frustrates Meaningful Review.**

Plaintiff next argues that the ALJ failed to identify Plaintiff's functional limitations or restrictions or assess his work-related abilities on a function-by-function basis. (Pl.'s Mem. at 5.) Defendant responds that, while the ALJ did not "conform to some rigid formula," the ALJ adequately provided a narrative discussion of her conclusions, thereby providing for meaningful review. (Def.'s Mem. at 18-19.)

In crafting a residual functional capacity, "the ALJ must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Shinaberry v. Saul*, 952 F.3d 113, 119 (4th Cir. 2020) (quoting *Monroe*, 826 F.3d at 179). This approach requires the ALJ to consider the exertional functions of the claimant, including the ability or inability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop or crouch. §§ 404.1545(b), 416.945(b); *Ladda v. Berryhill*, 749 F. App'x 166, 172-73 (4th Cir. 2018). An ALJ must first conduct a function-by-function analysis of these exertional functions before expressing the claimant's residual functional capacity in terms of exertional levels of work—such as sedentary, light, or heavy. *See Brown*, 873 F.3d at

16

254-55 (citing *Monroe*, 826 F.3d at 179).

An ALJ's failure to conduct a function-by-function analysis does not automatically require remand. *See Ladda*, 749 F. App'x at 172-73. Instead, remand is only appropriate if the ALJ "fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, *or where other inadequacies in the ALJ's analysis frustrate meaningful review*." *Id.* at 173 (emphasis added). For example, an ALJ's failure to provide a narrative discussion and explanation of residual functional capacity findings can frustrate meaningful review of a court. *See Hawkins v. Saul*, 796 F. App'x 159, 162 (4th Cir. 2019) ("Because the ALJ's analysis gives no indication of what functions it found [the plaintiff] able to perform and why . . . we are unable to review the [residual functional capacity] determination for substantial evidence."). The Court may not "fill in the blanks for the ALJ[,]" nor may the Court "[h]armoniz[e] conflicting evidence," or "bolster[] inconclusive findings" as these activities fall outside the scope of review. *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662-63 (4th Cir. 2017) (explaining that ALJs must "show [their] work").

In the present case, the ALJ did not conduct an adequate analysis of Plaintiff's physical functions and resulting limitations. As an initial matter, the ALJ concluded that Plaintiff suffered from numerous severe physical impairments, to include diabetes mellitus, peripheral neuropathy, hypertension, and degenerative joint disease in the knees. (R. at 17.) The ALJ also noted Plaintiff's "lower extremity problems," including "pain especially in the knees and feet," as well as reported use of a knee brace, a cane, and a wheelchair 2-3 days a week." (R. at 20-21.) Although the ALJ acknowledged Plaintiff's serious lower extremity issues, the ALJ failed to describe how the restrictions included in the residual functional capacity addressed or accommodated these limitations. For example, the ALJ concluded that Plaintiff was able to occasionally "climb ramps

and stairs" and "balance, stoop and crouch," but could never "[climb] ladders, ropes, and scaffolds" or crawl. (R. at 20). Yet the ALJ failed to identify specific evidence relevant to these functions or explain their inclusion in Plaintiff's residual functional capacity. Other than concluding that Plaintiff's severe impairments "significantly limit the ability to perform basic work activities" and that Plaintiff's other non-severe impairments "have been responsive to treatment and/or cause no more than minimal work-related limitations," the ALJ's analysis at step three failed to otherwise discuss Plaintiff's physical limitations in a meaningful way. (R. at 17-18.)

As discussed above, this failure is especially lacking in reference to Plaintiff's ability to stand, walk, and move about satisfactorily without the use of a cane. The ALJ provided the greatest weight to Plaintiff's treating physician, Dr. Sealand, who noted Plaintiff's "debilitating neuropathy" and opined that Plaintiff's neuropathy "limits his ability to walk, or stand for even short periods of time." (R. at 24, 1413.) Although the ALJ assigned great weight to Dr. Sealand's opinion, the ALJ failed to reconcile the finding that Plaintiff had limited ability to walk or stand "for even short periods of time" with the ALJ's ultimate conclusion that Plaintiff "can stand and walk for two hours . . . in an eight-hour workday, but must be able to alternate between sitting and standing in place every half hour." (R. at 20, 24.) Thus, although the ALJ did provide for some restrictions in Plaintiff's residual functional capacity determination, the ALJ did not address or explain how the ALJ reached the specific limitations included in Plaintiff's residual functional capacity.

Further, the ALJ failed to reconcile the inconsistencies in her decision relating to Plaintiff's ambulation with or without an assistive device. As described above, the ALJ found both that Plaintiff had the "ability to stand, walk, and move about satisfactorily without the use of a handheld assistive device," and that Plaintiff had "significant musculoskeletal, hypertension, diabetic, and

18

neuropathic issues" requiring the "use of a cane to ambulate." (R. at 20, 25.) The ALJ failed to reconcile the inconsistencies or explain her ultimate conclusion. Instead, the ALJ undermined Plaintiff's reports of pain and mischaracterized Plaintiff's reported daily activities, without providing medical evidence in support or a sufficient explanation. Moreover, although the ALJ concluded that Plaintiff can perform certain functions, she said nothing about Plaintiff's ability to perform those functions for a full workday. *See Mascio*, 780 F.3d at 636-37. In short, the ALJ's decision is lacking in the analysis and explanation needed for the Court to meaningfully review the ALJ's conclusions, leaving the Court to guess about how the ALJ arrived at her conclusions regarding Plaintiff's ability to perform certain relevant functions. Remand, therefore, is necessary to determine what the ALJ intended.

### E. Having Found that Plaintiff Had No Limitation in Concentration, Persistence, or Pace, the ALJ Did Not Err in Declining to Include a Corresponding Limitation in Plaintiff's Residual Functional Capacity.

Lastly, Plaintiff asserts that "the ALJ did not account for how long the Plaintiff would be off task during the work day due to pain." (Pl.'s Mem. at 5.) Plaintiff further argues that, "[b]ecause the ALJ gave no explanation why moderate limitations in concentration, persistence, or pace does not translate into an appropriate limitation residual functional capacity, a remand is in order." (Pl.'s Mem. at 5.) Defendant responds that, since the ALJ found that Plaintiff had no limitations in concentration, persistence, or pace, the ALJ was not required to include a related limitation in Plaintiff's residual functional capacity. (Def.'s Mem. at 16.)

Contrary to Plaintiff's argument, Defendant accurately notes that the ALJ did not find that Plaintiff had a *moderate* limitation in concentration, persistence, or pace. Instead, the ALJ concluded that Plaintiff had *no* limitation in concentration, persistence, or pace. (R. at 18.) Plaintiff does not challenge the ALJ's determination that Plaintiff has no limitation in concentration,

persistence, and pace. (Pl.'s Mem. at 5.) Instead, Plaintiff argues that the ALJ failed to consider whether an appropriate limitation in the residual functional capacity was necessary, citing *Mascio* 780 F.3d at 638; (Pl.'s Mem. at 5.)

Plaintiff's argument lacks merit and his reliance on *Mascio* is misplaced. In *Mascio*, the plaintiff argued that the ALJ should have considered the plaintiff's mental limitations upon finding that the plaintiff had moderate difficulties in maintaining her concentration, persistence, or pace as a side effect of her pain medication. 780 F.3d at 638. The Fourth Circuit concluded that, while it was possible that the ALJ *could* explain why a moderate limitation in concentration, persistence, or pace did not translate to a limitation in the plaintiff's residual functional capacity, remand was in order because the ALJ failed to provide such an explanation. *Id. Mascio* is therefore inapposite to the present case in which the ALJ found no limitation in concentration, persistence or pace. In the circumstances present here, in which the ALJ has found no limitation in a functional domain, substantial evidence supports the ALJ's residual functional capacity analysis. The ALJ, therefore, did not err in failing to include such limitations in Plaintiff's residual functional capacity.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 21) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 22) be DENIED, and the final decision of the Commissioner of Social Security be VACATED and REMANDED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge Henry E. Hudson.

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: July 8, 2021

21